IN THE MATTER OF: DR. J. EVERETTE CAMERON, JR., PETITIONER-APPELLANT
v. NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS,
RESPONDENT-APPELLEE

No. 884SC1380

(Filed 5 September 1989)

1. **Administrative Law § 8— review of dental board — consideration of record — no error**

    The trial court did not err when reviewing an action by the State Board of Dental Examiners, despite Dr. Cameron's contention that the trial court failed to review the entire record, where the judgment clearly stated that the court "considered the arguments and briefs of counsel and the entire record of proceedings before the Board as submitted . . ." and there was no evidence to the contrary in the record. N.C.G.S. § 150B-51.

2. **Administrative Law § 4; Appeal and Error § 40— Board of Dental Examiners — notice of hearing — supporting evidence not in record — assignment of error deemed abandoned**

    An assignment of error to the notice given appellant of a hearing before the Board of Dental Examiners was deemed abandoned where appellant was given 51 days notice of the hearing and, while appellant asserts that he was twice informed by telephone that the hearing date was changed, there is nothing in the record to support his argument except an unsworn assertion and a motion for continuance. Furthermore, appellant did not include in the record the written notice he was allegedly given on 7 August directing him to appear for a hearing on 9 August. Because appellant failed to include in the appellate record evidence necessary to support the assignment of error, it was deemed abandoned.

3. **Physicians, Surgeons and Allied Professions § 5; Administrative Law § 8— Board of Dental Examiners — findings regarding patient treatments — supported by evidence**

    In an action before the Board of Dental Examiners which resulted in a suspension of appellant's license to practice dentistry, there was sufficient evidence in view of the entire record as submitted to support the Board's findings regarding termination of the patient's treatment, the failure to undertake

necessary restorative work, and the stripping of interproximate enamel from the patient's teeth.

4. **Physicians, Surgeons and Allied Professions § 5; Administrative Law § 8— Board of Dental Examiners — suspension of license — not arbitrary, capricious or abuse of discretion**

The action of the Board of Dental Examiners in suspending appellant's license for a period of five years was not arbitrary, capricious and an abuse of discretion where the Board was clearly acting within its statutory authority after making the necessary findings. N.C.G.S. § 90-41.

APPEAL by petitioner from *Reid, Judge.* Judgment entered 22 July 1988 in Superior Court, ONSLOW County. Heard in the Court of Appeals 18 May 1989.

This is a civil case in which Dr. J. Everette Cameron, Jr. (Dr. Cameron) seeks appellate review of the trial court's order affirming the final agency decision of the North Carolina State Board of Dental Examiners (the Board). Based upon findings and conclusions that Dr. Cameron had committed acts constituting negligence and demonstrating incompetence, the Board issued its final agency decision suspending Dr. Cameron's license to practice dentistry for five years. The trial court affirmed the Board's decision and we affirm the trial court's judgment.

Dr. Cameron is licensed to practice dentistry in North Carolina. He has an orthodontic practice in Richlands and at the time of his hearing before the Board had approximately 200 orthodontic patients. On 19 February 1985 Dr. Cameron conducted an orthodontic consultation with Cindy Morton (Cindy) and diagnosed her as having slight anterior crowding and rotated upper lateral incisors.

Dr. Cameron testified that he began treatment for Cindy's condition by placing her in brackets and bands. Subsequently, he began a procedure referred to as "stripping." Stripping is a process where enamel is irreversibly removed from teeth using a diamond-flexy disk. Dr. Cameron testified that extraction of the bicuspids, a procedure he would not perform on a patient of Cindy's age, was an alternative to stripping. Dr. Cameron also testified that he stripped eight of Cindy's posterior teeth in the lower arch, recontoured her lower front teeth with sandpaper, and may have stripped two upper teeth.

IN RE CAMERON v. N.C. BD. OF DENTAL EXAMINERS

[95 N.C. App. 332 (1989)]

Three general dentists, Dr. Miller, Dr. Ipock, and Dr. Reid, along with two orthodontists, Dr. Gorman and Dr. Willis, and a professor of orthodontics at the University of North Carolina School of Dentistry, Dr. Proffit, also testified concerning Cindy's condition after examining her and reviewing her dental records. Each practitioner agreed that Cindy had slight anterior crowding but believed stripping of her posterior teeth was both inappropriate and a violation of the standard of practice of dentistry in North Carolina. Dr. Reid also testified, and Dr. Ipock agreed, that 15 of Cindy's teeth had been stripped. Dr. Miller testified correct treatment would have involved a fixed orthodontic appliance or "removable appliances" that would have expanded the arches of Cindy's mouth.

Dr. Cline, a dentist not licensed to practice in North Carolina, testified that posterior stripping was acceptable. He testified that posterior stripping was appropriate in this case, even though he had never examined Cindy.

Dr. Cameron testified that he removed Cindy's brackets and bands on 26 June 1986 before he thought it was appropriate because Cindy insisted. Dr. Cameron planned to recontour her teeth after he removed her brackets and bands. Dr. Cameron also alleges in his brief that he was prevented from doing the necessary reconstructive work because Cindy was then living in New Bern and because she had told his office that she would have Dr. Miller of New Bern perform the needed treatment.

Cindy testified that she thought Dr. Cameron took off the bands "[b]ecause they were ready."

Cindy alleges that as a result of Dr. Cameron's treatment her teeth became sensitive to temperature making it difficult for her to eat and causing her to lose approximately 15 pounds. In addition, Dr. Cameron's treatment allowed food to pack between her teeth which caused tooth decay. Dr. Miller testified that he placed 18 crowns on Cindy's teeth in an attempt to reconstruct her mouth. However, Dr. Proffit testified that contacts between her teeth would never be fully restored. Cindy's parents paid Dr. Cameron's $1,200 fee.

On 18 March 1987 Cindy filed a complaint with the North Carolina State Board of Dental Examiners. On 18 May 1987 the Board gave Dr. Cameron written notice that it would conduct a hearing on 5 June 1987 to determine whether he had violated

IN RE CAMERON v. N.C. BD. OF DENTAL EXAMINERS

[95 N.C. App. 332 (1989)]

various provisions of G.S. 90-41(a). On 26 May 1987 Dr. Cameron was given written notice that the hearing would be continued until 25 July 1987. On 26 June 1987 Dr. Cameron was given another written notice of continuance until 16 August 1987.

Dr. Cameron alleges in his brief that he was notified by the Board during a telephone conversation that his hearing would be continued until 23 August 1987. He also alleges that during another telephone conversation on 4 August 1987 the Board advised him that the hearing would be advanced to 16 August 1987. Finally, Dr. Cameron's brief points out that on 7 August 1987 he "was served with a written notice directing him to appear for the hearing on August 9, 1987." The hearing was conducted on 16 August 1987.

*Gray Woods & Cooper, by M. Kevin Lett, and Lanier & Fountain, by Keith E. Fountain, for petitioner-appellant.*

*Bailey & Dixon, by Patricia P. Kerner, for respondent-appellee.*

EAGLES, Judge.

Appellant contends the trial court erred in the following respects: the trial court used the wrong standard of review; appellant was not given adequate notice of his hearing before the Board; there was not substantial evidence to support the Board's findings and conclusions; and appellant's five year suspension is arbitrary, capricious, and an abuse of discretion. We disagree and affirm the court below.

I

[1] Dr. Cameron contends the trial court erred by failing to review the entire record as submitted as required by G.S. 150B-51. The judgment here clearly states that the court "considered the arguments and briefs of counsel and the *entire record of proceedings* before the Board as submitted. . . ." Further, there is no evidence to the contrary in the record. Even where it is only implicit in the judgment that the superior court considered and ruled on all matters presented by the petitioner, we do not disturb the judgment. *See House of Raeford Farms, Inc. v. Brooks,* 63 N.C. App. 106, 112, 304 S.E.2d 619, 623 (1983), *rev. denied,* 310 N.C. 153, 311 S.E.2d 291 (1984). Where the judgment explicitly states that the court considered the entire record and no basis exists for a contrary conclusion, we will not disturb the judgment. Accordingly, this assignment is overruled.

II

**[2]**  Dr. Cameron also contends that the trial court erred in concluding that the Board complied with the notice requirements set out in G.S. 150B-38(b). We disagree. G.S. 150B-38(b) in relevant part provides:

> Prior to any agency action in a contested case, the agency shall give the parties in the case an opportunity for a hearing without undue delay and notice not less than 15 days before the hearing. Notice to the parties shall include:
>
> (1) A statement of the date, hour, place, and nature of the hearing. . . .

In the instant case, Dr. Cameron was given written notice on 26 June 1987 that his hearing was being continued until 16 August 1987. Dr. Cameron had 51 days notice, ample notice to facilitate his preparation.

Additionally, while appellant asserts in his brief that he was twice contacted by telephone that the hearing date was changed, there is nothing in the record to support his argument except an unsworn assertion in a motion for continuance. Additionally, appellant does not include the written notice he allegedly was given on 7 August 1987 directing him to appear for a hearing on 9 August 1987. It is the appellant's responsibility to insure that the record on appeal is properly prepared. *Loeb v. Loeb*, 72 N.C. App. 205, 218, 324 S.E.2d 33, 42 (1985), *reversed on other grounds, Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986). On appeal this court is "bound by the record as certified and [we] can judicially know only what appears of record." *Vassey v. Burch*, 301 N.C. 68, 74, 269 S.E.2d 137, 141 (1980). The appellant here failed to include in the appellate record evidence necessary to support this assignment of error. Because of these deficiencies in the appellate record, this assignment of error is deemed abandoned. *See Fortis Corp. v. Northeast Forest Products*, 68 N.C. App. 752, 754, 315 S.E.2d 537, 538-39 (1984).

III

**[3]**  Dr. Cameron next contends the Board's findings regarding the termination of Cindy's treatments were not supported by substantial evidence in view of the entire record as submitted. This Court aptly stated the standard of our review in *Little v. Board of Dental Examiners*, 64 N.C. App. 67, 68-69, 306 S.E.2d 534, 536 (1983):

**IN RE CAMERON v. N.C. BD. OF DENTAL EXAMINERS**

[95 N.C. App. 332 (1989)]

The standard of our review is chartered by G.S. 150[B]-51(5) which requires us to determine whether the findings and conclusions are supported "by substantial evidence . . . in view of the entire record as submitted." By case law an insignificant variation of the words "entire record" has become "whole record," and this is the test we must apply.

\* \* \*

The "whole record" test demands that "[i]f, after all of the record has been reviewed, substantial competent evidence is found which would support the agency ruling, the ruling must stand." In this context substantial evidence has been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Therefore, in reaching its decision, the reviewing court is prohibited from replacing the Agency's findings of fact with its own judgment of how credible, or incredible, the testimony appears to them to be, so long as substantial evidence of those findings exist in the whole record. [Citations omitted.]

### A.

Dr. Cameron first contends that there was not substantial evidence to support the Board's finding that he terminated Cindy's treatment. We disagree.

Dr. Cameron and Shandra Kirby, Dr. Cameron's dental assistant, testified that Cindy's treatment was terminated at her insistence. However, Cindy testified:

Q: When Dr. Cameron took your bands off, had you demanded that he do it?

A: Every time I saw him, I wanted them off. "When can we get them off? When can we get them off?" In May of 1986, we decided we would take them off the next month. So I knew I was going to have them off.

Q: Did you think they were coming off because you had insisted or because they were ready to come off?

A: *Because they were ready.* [Emphasis added.]

The Board's finding is further substantiated by Dr. Miller's testimony. Dr. Miller's deposition testimony reads in part as follows:

Q: You mentioned that when you called Doctor Cameron to discuss Cindy Morton's case, that you discussed he had taken her out of bands prematurely because of her insistence. Did you ask her about that?

A: She just laughed when I said that. She discounted that as being factual. She said, "No, maybe I did want to get out of orthodontics, but I wanted my teeth straight." I think that was about how she put it. . . .

## B.

Second, Dr. Cameron contends there is not substantial evidence to support the Board's finding that he failed to undertake necessary restorative work on Cindy's teeth. Dr. Cameron claims that the day after Dr. Cameron removed her brackets and bands, Cindy told his office that she would let Dr. Miller perform the necessary restoration. However, Cindy testified that she did not tell Dr. Cameron's staff that she would see Dr. Miller for treatment in the future until January 1987 — seven months after the bands and brackets were removed.

## C.

Finally, appellant argues there is not substantial evidence to support the Board's finding that Dr. Cameron stripped "interproximate enamel from virtually all of [Cindy's] posterior teeth." Dr. Cameron testified that he only stripped 8 posterior teeth. However, Dr. Reid testified, and Dr. Ipock agreed, that 15 of Cindy's teeth had been stripped, while Dr. Miller testified that 14 of Cindy's teeth were stripped.

Upon review of the whole record, though there is some evidence to the contrary, we find substantial competent evidence to support each of the agency's findings. Appellant's assignments of error are without merit and the agency findings must stand.

## IV

[4] Finally, appellant contends that the order of the Board suspending appellant's license for a period of five years is arbitrary, capricious and an abuse of discretion. We disagree.

G.S. 90-41 provides, in pertinent part, as follows:

IN RE CAMERON v. N.C. BD. OF DENTAL EXAMINERS

[95 N.C. App. 332 (1989)]

(a) The North Carolina State Board of Dental Examiners shall have the power and authority to

\* \* \*

(3) Revoke or suspend a license to practice dentistry; and

(4) Invoke such other disciplinary measures, censure, or probative terms against a licensee as it deems fit and proper;

in any instance or instances in which the Board is satisfied that such applicant or licensee:

\* \* \*

(12) Has been negligent in the practice of dentistry;

\* \* \*

(14) Is incompetent in the practice of dentistry;

\* \* \*

(19) Has, in the practice of dentistry, committed an act or acts constituting malpractice. . . .

The Board was clearly acting within its statutory authority when it suspended Dr. Cameron's license after making the necessary findings. This court and the superior court may reverse or modify the decisions of the Board if they are arbitrary or capricious. *See In re Wilkins*, 294 N.C. 528, 543, 242 S.E.2d 829, 838 (1978), *abrogated on other grounds*, *In re Guess*, 324 N.C. 105, 376 S.E.2d 8 (1989). Here, we find the Board's suspension of Dr. Cameron's license was neither arbitrary nor capricious.

The order below is

Affirmed.

Judges PARKER and ORR concur.